UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAOXING DAQIN IMPORT &
EXPORT CO., LTD.,

                    Plaintiff,

       -against-

NOTATIONS, INC., SCOTT ERMAN,
and LYNN BRANDS, LLC,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

19-cv-2732 (JSR)

MEMORANDUM AND ORDER

JED S. RAKOFF, U.S.D.J.

     This case concerns claims arising from unpaid fabric orders
plaintiff Shaoxing Daqin Import & Export ("Shaoxing") fulfilled
in the course of its dealings with defendants Notations, Inc.
("Notations") and Scott Erman. Plaintiff alleges numerous
contract, quasi-contract, and tort claims against Notations and
Erman, as well as successor liability claims against defendant
Lynn Brands, LLC ("Lynn Brands"), which purchased Notations's
assets in early 2019.

     Now before the Court are the defendants' motions for
summary judgment against plaintiff. For the reasons below, the
Court grants the motions in part and denies them in part.
Further, the Court grants Notations and Erman's motion for
summary judgment against Lynn Brands's cross-claim for
indemnification.

I.   Summary Judgment Standard

1

"Summary judgment is proper when, after drawing all
reasonable inferences in favor of a non-movant, no reasonable
trier of fact could find in favor of that party." Heublein, Inc.
v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); see also
Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment
if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law."). "A fact is 'material' for these purposes if it 'might
affect the outcome of the suit under the governing law.'" Holtz
v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)). "An issue of fact is 'genuine' if 'the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party.'" Id. "Genuine issues of fact are not created by
conclusory allegations." Heublein, 996 F.2d at 1461.

"Rule 56(c) mandates the entry of summary judgment . . .
against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To
avoid summary judgment, "[t]here must be more than a 'scintilla
of evidence' in the non-movant's favor; there must be evidence
upon which a fact-finder could reasonably find for the non-

2

movant. Heublein, 996 F.2d at 1461 (quoting Anderson, 477 U.S. at 252).

## II. Notations and Scott Erman's Motion for Summary Judgment Against Plaintiff

### a. Facts Specific to Notations and Scott Erman's Summary Judgment Motion

Until March 4, 2019, Notations was a manufacturer of women's apparel. Defendants Notations, Inc. and Scott Erman's Statement of Material Facts ("Notations SMF") ¶ 1, ECF No. 41. Scott Erman was President of Notations from about 2014 or 2015 until 2019. Id. ¶ 79. Notation's production model started with its designing garments and determining what fabrics to use. Plaintiff, Shaoxing Daqin Import & Export Co., Ltd., was one of Notations's fabric suppliers. When ordered, fabric was shipped by plaintiff to garment factories that assembled the completed garments, after which the garments were shipped to Notations. Id. ¶ 2. There is no dispute that neither Notations nor Scott Erman has any ownership interest in the garment factories, which included Easytex, PT Doosan, Now Vina Corp., Kody, and Hwain. Id. ¶¶ 3-4.

Parties are in substantial disagreement about how exactly fabric orders were placed. They agree, however, that somewhere in the order process either Notations or the garment factories would issue purchase orders ("Fabric POs" or "POs") describing

3

fabric orders from plaintiff. Notations SMF ¶ 7-8; Response to
Defendants Notations and Scott Erman's Rule 56.1 Statement ("Pl.
Notations SMF") ¶ 2. These POs each listed a "Bill To" and "Ship
To" party. Plaintiff generally sent invoices to the company
designated as the "Bill To" party on a PO. Notations SMF ¶ 8;
Pl. Notations SMF ¶ 2. Throughout this process of issuing POs
and invoices, plaintiff and Notations were in communication
about the details of orders.

At issue in this litigation are amounts owed on a number of
fabric orders documented in such POs that ultimately were
delivered to Notations but were never paid for in full by either
Notations or the garment factories. The orders are documented in
a "Proof of Claim" document generated by plaintiff. Shen Decl.
Exh. 6, ECF No. 40. Plaintiff seeks a total of $700,000 in
compensatory damages listed in the Proof of Claim. Pl. Notations
SMF ¶¶ 10-11. Notations does not dispute that it owes $127,000
for orders where Notations was listed as the "Bill To" party,
but claims it is not responsible for the remainder of the orders
where garment factories were listed as the "Bill To" parties.
Notations SMF ¶ 13. Plaintiff asserts a number of theories by
which defendants could be held liable for the rest of the
$700,000 listed in the Proof of Claim.

b. Breach of Contract

4

Plaintiff first alleges a breach of contract claim. Under New York law, the elements of a breach of contract claim are "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." RCN Telecom Servs., Inc. v. 202 Centre Street Realty LLC, 156 Fed. Appx. 349, 350-51 (2d Cir. 2005) (summary order). Because the sale of goods is involved, Article 2 of New York's Uniform Commercial Code ("UCC") controls. See Integrated Circuits Unlimited v. E.F. Johnson Co., 875 F.2d 1040, 1041 (2d Cir. 1989).

Plaintiff has failed to establish the first element of its breach of contract claim, viz., that a contract exists that might entitle it to payment from Notations and Scott Erman. While Notations and Erman argue that plaintiff has admitted that a series of "PO" or purchase orders and invoices constitute the contracts at issue in this suit, this is not the case. To the contrary, plaintiff argues that the POs and invoices were merely confirmation notices that did not represent all of the terms of agreements between plaintiff and defendants. Pl. Mem. of Law in Opp. to Defs. Notations & Scott Erman's Mot. for Summary Judgment ("Pl. Opp. Notations & Erman") 13-14, ECF No. 48. However, while plaintiff clearly disputes that the POs and invoices are controlling contracts, it offers no alternative contract theory precluding summary judgment.

5

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 N.Y. Jur. 2d, Contracts § 9). That meeting of the minds must include agreement on all essential terms (id. § 31)." Resetarits Const. Corp. v. Olmsted, 118 A.D.3d 1454, 1455, 988 N.Y.S.2d 797, 798 (2014). The burden of proving the existence of the contract falls on the party seeking to enforce it, in this case plaintiff.

Plaintiff has failed to make a showing sufficient to establish such a contract here. Plaintiff instead offers a litany of communications between it and defendants that it claims require defendants to pay for fabrics plaintiff delivered to a third party. While such communications, coupled with plaintiff's production of the fabrics, might in theory constitute an offer and acceptance, plaintiff does not articulate such a theory, much less provide support for it. By failing to demonstrate how defendants might be bound by their communications with plaintiff, plaintiff has failed to allege facts demonstrating the existence of a contract that defendants could have breached. The Court thus grants Notations and Erman's summary judgment motion against plaintiff on its breach of contract claim.

c. Quasi-Contract Claims

Plaintiff asserts several quasi-contract claims against defendants Notations and Scott Erman. These include claims for quantum meruit, unjust enrichment, promissory estoppel, and equitable estoppel. Notations and Erman first argue that these claims are preempted by plaintiff's breach of contract claim. In order to be preempted, however, a contractual relationship must govern the parties' relationship. See Janousky v. North Fork Bancorporation, Inc., No. 08 Civ. 1858 (PAC), 2011 WL 1118602, at *1 (S.D.N.Y. 2011); Park Irmat Drug Corp. v. Optumrx, Inc., 152 F.Supp.3d 127, 138 (S.D.N.Y. 2016). Indeed, "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies." Am. Tel. & Util. Consultants, Inc. v. Beth Israel Med. Ctr., 763 N.Y.S.2d 466, 466 (N.Y. App. Div. 2003).

As the movant, defendants must show that there is no genuine dispute that a contract covers the issues in this case. Defendants have not met this burden here. Although they argue that the POs and invoices are controlling contracts in this case, defendants have failed to establish as much. Rather than offering legal or factual support for this proposition, defendants simply assert that plaintiff has conceded that the POs and invoices are controlling contracts. As previously

7

discussed, plaintiffs do not concede as much. Thus, defendants have failed to meet their burden of demonstrating that there is no genuine dispute that a contract covers the issues in this case, and plaintiff's quasi-contract claims are not preempted, as a general matter. The Court therefore turns to each of the specific claims.

### i. Promissory Estoppel

To make out a claim for promissory estoppel, a plaintiff must prove (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance. Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996). Here, plaintiff claims that it relied to its detriment on Notations and Erman's promises to pay for the fabrics sent to the garment factories. Plaintiff's claim cannot succeed because plaintiff has not adduced evidence of a "clear and unambiguous promise" or misrepresentation by Notations or Erman.

Although plaintiff's brief is unclear, it seems to argue that certain communications from Notations concerning the garment factories' debts constituted promises by Notations to pay such debts. Primarily, plaintiff focuses on Notations' repeated representations that it would try to get the garment factories to pay plaintiff. Pl. Notations SMF ¶¶ 127-156. All of the language that plaintiff points to, however, is conditional,

8

rather than unambiguous. Plaintiff, for example, argues that Erman's statement in an email that he "Will keep pushing" to get a garment factory to pay constituted a promise to pay. Id. ¶ 137. Such conditional language does not constitute an unambiguous promise that either Notations or the factory would pay.

As another example, Notations agreed on November 1, 2018 to advance $15,000 to plaintiff for amounts due from the garment manufacturer Kody. The email, from Scott Erman, reads, "I will try and release some of the $$ next week to u owed by Kody.. I will start with $15k and pay down for u!" Han Notations Decl. Exh. 25, 383-384, ECF No. 49. Plaintiff claims that this email "lull[ed] Plaintiff to continue to produce fabrics for Defendants, [because] Scott promised that he would pay down the money that he asked Plaintiff to bill Kody." Pl. Notations SMF ¶ 149. The language of the email, however, is by no means a clear and unambiguous promise to pay the money Kody owed. Indeed, it uses the word "try" and indicates that the money was "owed by Kody." The email thus does not constitute evidence of a clear and unambiguous promise to pay Kody's debts.

Because none of the communications plaintiff cites constitutes a clear and unambiguous promise by defendants to pay money owed by garment factories, or a clear and unambiguous promise that the garment factories would pay their own debts,

9

the Court grants Notations and Erman's motion for summary
judgment against plaintiff on its promissory estoppel claim.

ii. Equitable Estoppel

Plaintiff next alleges that Notations and Erman did not
deny that they ordered fabrics from plaintiff and are thus
precluded from denying they must pay for such orders under the
principle of equitable estoppel. "A plaintiff asserting
equitable estoppel must show, on the part of the party being
estopped: '(1) conduct which amounts to a false representation
or concealment of material facts; (2) intention that such
conduct will be acted upon by the other party; and (3) knowledge
of the real facts.'" Randolph Equities, LLC v. Carbon Capital,
Inc., 648 F. Supp. 2d 507, 524 (S.D.N.Y. 2009) (quoting In re
Vebeliunas, 332 F.3d 85, 93-94 (2d Cir. 2003)). "The plaintiff
must also show, on its part: '(1) lack of knowledge and of the
means of knowledge of the true facts; (2) reliance upon the
conduct of the party to be estopped; and (3) prejudicial changes
in [its] position [ ].'" Id. (quoting In Re Vebeliunas, 332 F.3d
at 94).

There does appear to be some evidence in the record that a
reasonable jury might find amounted to "conduct which amounts to
a false representation" that Notations and Erman were the true
party that ordered and were responsible for paying for the
fabric that was "billed to" the garment factories. First, it is

10

clear from the record that Notations and Erman were heavily involved in negotiating many aspects of the order, including color, price, and shipping. Pl. Notations SMF ¶¶ 104-126. Second, Erman referred to the orders as "our fabric buy," Han Notations Decl. Exh. 17, and "our orders," Id. Exh. 25 at 1311. Third, Erman did on one occasion pay plaintiff $15,000 for an order owed by Kody. Shen Decl. Exh. 24, 26. Taken together and in the light most favorable to plaintiff, this conduct suggests that Notations and Erman represented that they were responsible for the orders, not the garment factories.

Plaintiff's own conduct, however, forecloses the possibility of an equitable estoppel claim. No reasonable jury could find that plaintiff "lacked knowledge . . . of the true facts," namely that the factories were responsible for payment. First, plaintiff regularly accepted payment from the factories where the POs or invoices were addressed to the factories. Shen Decl. Exh. 2 at 15-16. Second, plaintiff repeatedly asked for Erman's help in securing payments from the garment factories. See, e.g., Han Notations Decl. Exh. 25. Plaintiff also directly asked for payment from the garment factories. See, e.g., Shen Decl. Exh. 25, 27. Finally, the POs and invoices, many of which were created by plaintiff itself, indicated that the garment factories were the "Bill To" parties.

11

Given this evidence, no reasonable jury could find that plaintiff lacked knowledge and the means of knowledge of the true facts, an essential prong of the promissory estoppel claim. The Court thus grants Notations and Erman's motion for summary judgment against plaintiff on its equitable estoppel claim.

### iii. Quantum Meruit and Unjust Enrichment

Plaintiff first asserts a quantum meruit and unjust enrichment claim against Notations and Erman. Under New York law, courts "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim," because unjust enrichment is simply an element of the former claim. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citation omitted). A claim in quantum meruit requires Plaintiff to establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Id. at 175. Numerous courts have found that for a quantum meruit claim to succeed, plaintiffs must demonstrate that their expectation of payment from a defendant were "reasonable." See Bretillot v. Burrow, No. 14CV633, 2015 WL 5306224, at *17 (S.D.N.Y. June 30, 2015) (compiling cases), report and recommendation adopted, 2015 WL 6455155 (S.D.N.Y. Oct. 26, 2015).

Because there does not appear to be a dispute with regard to performance, acceptance, or the value of services, whether plaintiff's quantum meruit claim survives summary judgment turns on whether it can demonstrate that its expectation of compensation from Notations and Erman was reasonable.

The evidence points in both directions. On the one hand, a number of facts already mentioned suggest that it was unreasonable for plaintiff to expect payment from defendants. Plaintiff has not alleged facts evincing any unambiguous promise by defendants to pay, see supra Section II.c.i. Further plaintiff accepted payments from the garment factories, asked defendants for help in getting the garment factories to pay, and regularly produced POs and invoices with garment factories as the bill to party, see supra Section II.c.ii.

On the other hand, plaintiff has adduced evidence that Notations and Erman were heavily involved in negotiating many aspects of the orders, referred to the orders as "our fabric buy" and "our orders," and on one occasion paid plaintiff $15,000 for an order owed by a garment factory. Although not overwhelming, this latter evidence, taken in the light most favorable to plaintiff, is enough to create a material question as to whether plaintiff reasonably expected payment from Notations. The Court thus denies Notations and Ermans's motion

for summary judgment on plaintiff's quantum meruit and unjust enrichment claim.

d. Fraud

Plaintiff alleges fraud against Notations and Scott Erman. Plaintiff appears to base its fraud argument on the following: (1) defendants had enough money to pay plaintiff but chose not to; (2) defendants failed to disclose that their business was being transferred, leading plaintiff to continue fulfilling defendants' fabric orders; (3) defendants' failure to indicate that they were not responsible for payments where garment factories were the "bill to" parties; (4) defendants' promise to pay $15,000 of Kody's debt; (5) defendants' assurances that they would try to make the garment factories pay; and (6) defendants' failure to point out that Notations would not be able to pay the full amount of its obligations after its assets were purchased. Plaintiff claims that all of these deeds and statements defrauded plaintiff into continuing to manufacture and produce fabrics for them without payment.

Notations and Erman first argue that plaintiffs' fraud claim is duplicative of its breach of contract claim. Under New York law, a fraud claim is not duplicative of a breach of contract claim where, inter alia, the alleged fraudulent misrepresentation was "collateral or extraneous to" a controlling contract. Bridgestone/Firestone v. Recovery Credit

14

Services, 98 F.3d 13, 20 (2d Cir. 1996) (internal quotation marks and citation omitted). Because there is not clearly a controlling contract in this case, plaintiff cannot adduce evidence that any challenged representations were part of that contract. See Shaoxing Bon Textiles Co. Ltd. V. 4-U Performance Group LLC, 2017 WL 6413993, *3 (S.D.N.Y. 2017). Plaintiff's fraud claim is thus not duplicative.

Plaintiff's fraud claims nonetheless should be dismissed because plaintiff has not provided clear and convincing evidence that Notations and Erman made any misrepresentations or omissions of material fact upon which plaintiff relied. Under New York law, a claim for fraud requires proving: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (per curiam). In proving the elements of fraud, "the proponent of the claim must put forth clear and convincing evidence, a standard which applies at the summary judgment stage as well as at trial. Laugh Factory, Inc. v. Basciano, 608 F.Supp.2d 549, 558 (S.D.N.Y. 2009) (citation omitted).

Plaintiff has not presented clear or convincing evidence of any intentional misrepresentation on the part of Notations and

15

Erman. First, plaintiff's claim that defendants had enough money to pay plaintiff but simply chose not to is irrelevant to its fraud claim.

Second, plaintiff has not adduced any evidence that defendants' promise to pay $15,000 of Kody's debt was a knowing or intentional misrepresentation. Scott Erman sent two communications related to this $15,000. First, Erman explained in an email to plaintiff that "I will try and release some of the $$ next week to u owed by Kody.. I will start with $15k and pay down for u!" Han Notations Decl. Exh. 25, 383-384. Erman also sent a text message reading, "Sent u 15k against Kody's 50k for tmw.. Also - Bae at Doosan will pay u $10k this week and every week for the next 5-6 weeks to pay down." Id. Exh. 25 at 1110. Even if this language might be read as a misrepresentation that either Noations or the garment factories would pay, plaintiff has not alleged any facts suggesting that defendant knew this information to be false.

To the extent plaintiff argues that the payment itself was a misrepresentation intended to induce plaintiff to release more garments to the garment factories, plaintiff simply does not plead facts sufficient to support this proposition. Plaintiff has provided no evidence that anything in the email, Shen Decl. Exh. 26, and text message, Han Notations Decl. Exh. 25 at 1110,

demonstrates any intent to deceive on the part of Notations or Erman.

Erman's repeated communications indicating that he would attempt to get the garment factories to pay do nothing more to demonstrate a fraudulent misrepresentation. As discussed with regard to plaintiff's promissory estoppel claim, these communications were simply conditional offers to "push" or "try" to get the factories to pay, not promises or guarantees that might rise to the level of a misrepresentation. Pl. Notations SMF ¶¶ 127-156. Even if these communications rose to the level of a misrepresentation, they are not enough to support a finding of intent to defraud because "mere failure of promised performance has never permitted a factual finding that defendants never intended to perform." Soper v. Simmons Intern., Ltd., 632 F. Supp. 244, 249 (S.D.N.Y. 1986).

The closest plaintiff comes to alleging a misrepresentation is its claim that "to lull Plaintiff to continue to fulfill Notations' ongoing new purchase orders, on or about February 10, 2019, Defendant Erman made false representations to Plaintiff that Notations was about two weeks away to receive [sic] investment from its strategic partner to keep Notations' business going forward." Am. Compl. ¶ 19. This appears to refer to a February 10, 2019 email in which Erman did claim that he was "about 2 weeks away to landing an investment

17

via a strategic partner to provide liquidity to make us go forward." Han Notations Decl. Exh. 38 at 1114. Plaintiff, however, has adduced no evidence showing that defendant knew that this information was false. Furthermore, plaintiff has not shown reliance because none of the disputed purchase orders in this action were issued after February 10, 2019. Pl. Notations SMF ¶ 10.

To the extent plaintiff argues that Notations and Erman made material omissions supporting a fraud claim, plaintiff has also failed to adduce evidence sufficient to support this claim. An omission is only actionable as a fraud claim where the plaintiff has alleged that "the defendant has a duty to disclose material information and that it failed to do so." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 179 (2011). Plaintiff has not adduced any evidence suggesting that defendants had any such duty, and thus cannot base its fraud claim on an omission theory.

Accordingly, the Court grants Notations and Erman's motion for summary judgment on plaintiff's fraud claim.

e. Piercing the Corporate Veil

Plaintiff finally argues that the Court should pierce the corporate veil against Scott Erman because Erman used his domination over Notations to commit fraud and wrongs. "New York courts disregard corporate form reluctantly."

18

Bridgestone/Firestone, 98 F.3d at 17. Nonetheless, under New York law, a court may pierce the corporate veil where 1) "the owner exercised complete domination over the corporation with respect to the transaction at issue," and 2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001). Here, however, because plaintiff has failed to adduce evidence showing that Scott Erman exercised complete domination over Notations, this claim cannot survive summary judgment.

In determining whether an individual "exercised complete domination" such that the corporate veil should be pierced, courts consider a number of factors including whether there has been "intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." *Bridgestone/Firestone, Inc.*, 98 F.3d at 18. Plaintiff appears to argue that the following facts demonstrate Erman's complete domination: 1) Notations has not maintained a correct business registration; 2) Notations never had a shareholder meeting or board meeting; 3) Notations was

19

inadequately capitalized in 2018 and 2019; and 4) Scott runs his personal or family expenses through Notations.

Notations does appear to adduce evidence supporting its assertion that Notations failed to follow formalities such as maintaining a correct business registration, Han Notations Decl. Exh. 3, and never having a shareholder meeting, Id. Exh. 1, Erman Tr. 17:25-18:10. Plaintiff also offers some minimal evidence that Notations was inadequately capitalized in 2018 and 2019, citing a notice of default from Wells Fargo Bank indicating that Notations lacked sufficient capital in January of 2019. Erman Decl. Exh. 7. Finally, plaintiff produced a very small amount of evidence suggesting that Scott Erman runs his personal or family expenses through Notations, consisting of a check from Notations to Erman himself and a check from Notations to Mercedes Benz. Han Notations Decl. Exh. 4. Taken in the light most favorable to plaintiff it is possible that these checks represent an intermingling of corporate and personal funds.

However, this minor evidence of a lack of formalities, undercapitalization in one year, and some intermingling of personal and corporate funds is not enough evidence to allow a reasonable jury to find that Erman exercised complete domination over Notations. First, with small or family-run corporations such as Notations, minor disregard of the corporate form such as this is not grounds for piercing the veil. Tycoons Worldwide

20

Group (Thailand) Public Co., Ltd. V. JBL Supply, Inc., 721 F.

Supp. 2d 194, 206 (S.D.N.Y. 2010). Second, the fact that

Notations was in business for 40 years weighs against veil-

piercing on the grounds that it was undercapitalized in 2018 or

2019. In re Stage Presence, Inc., 592 B.R. 292, 305 (Bankr.

S.D.N.Y. 2018), aff'd, No. 12-10525, 2019 WL 2004030 (S.D.N.Y.

May 7, 2019). Third, other evidence, such as the fact that Erman

only earned a salary in his position as president and did not

receive any bonus or profit sharing, and the fact that Notations

maintained separate corporate bank accounts, maintained

corporate departments including a finance department, and

employed a CFO who was not a member of Erman's family, suggest

that there was no regular commingling of funds. Erman Tr. 14:24-

23; Erman Decl ¶¶ 14-15.[1]

Ultimately, while plaintiff has offered a small amount of

evidence of informalities, undercapitalization, and one instance

of commingling of funds, plaintiff has not adduced sufficient

evidence to create a material dispute as to whether Erman

exercised "complete domination" over Notations.

---

[1] Plaintiff argues that this deposition testimony is not
admissible. However, a declaration may be sufficient "to support
or oppose a motion," so long as it is "made on personal
knowledge, set[s] out facts that would be admissible in
evidence, and show[s] that the affiant or declarant is competent
to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).
Further, depositions also constitute admissible evidence. Fed.
R. Civ. P. 32.

21

The Court thus grants Erman's motion for summary judgment against plaintiff on its veil-piercing claim.

III. Lynn Brands's Motion for Summary Judgment Against Plaintiff

   a. Facts Specific to Lynn Brands's Summary Judgment Motion

   In late 2018, Notations began to accrue substantial debt to its fabric suppliers, including plaintiff Shaoxing. Defendant Lynn Brands Statement of Material Facts in Support of Summary Judgment Pursuant to Local Rule 56.1 ("Lynn Brands SMF") ¶ 28, 32-33, ECF No. 44, Exh. 1. Around this time, Notations began to contemplate the sale of its business. Lynn Brands Han Decl. Ex. 2, ECF No. 53. On or about October 2018, Notations hired Avalon Net Worth ("Avalon"), an independent financial advisor. The parties dispute Avalon's role, but Lynn Brands claims that Avalon recruited a number of potential buyers or investors for Notations.

   Wells Fargo Bank was a first priority secured lender with a blanket lien on all of Notations's assets. Lynn Brands SMF ¶ 13. On January 22, 2019, Notations received a notice of default from Wells Fargo pursuant to the factoring agreements between them. Id. ¶ 49. Shortly thereafter, Notations considered offers from multiple potential buyers. Each group proposed an acquisition of assets pursuant to the foreclosure process under Article 9 of the UCC. Id. ¶ 58. Two potential buyers submitted a non-binding

22

letter of intent offering to purchase Notations' assets from
Wells Fargo in mid-January, but neither deal went through.
Finally, on February 14, 2019, Notations received a letter of
intent from what would ultimately become now-defendant Lynn
Brands, proposing a purchase of Notations's assets from Wells
Fargo through an Article 9 secured party foreclosure or sale. On
February 22, 2019, Lynn Brands was incorporated under the laws
of the State of New York.

Between February 14, 2019 and March 4, 2019, Notations,
Lynn Brands, and Wells Fargo negotiated Lynn Brands's
acquisition of Notations's assets. On March 4, 2019, Wells
Fargo, pursuant to its agreements with Notations and Article 9
of the UCC, foreclosed on certain of Notations's assets and sold
them to Lynn Brands. Lynn Brands did not expressly assume the
liabilities of Notations in the transaction with Wells Fargo.
Notations then paid off its debt to Wells Fargo, and reserved
the remainder of its funds to distribute to the rest to its
unsecured creditors. On March 4, Notations notified plaintiff of
the foreclosure and informed it that the purchasing company
would not be responsible for Notations's debts.

Since that point, Notations has been winding down its
business. Lynn Brands hired some of Notations's former employees
and began operating in the same office that Notations had
occupied. Further, Lynn Brands employed Scott Erman as a senior

23

executive in sales and merchandising. However, neither Notations
nor Scott Erman has any ownership interest in Lynn Brands.[2]
Someone named Cathy Wang, who participated in the negotiation of
the purchase of Notations's assets, also works at Lynn Brands,
where she is senior to Erman.

Plaintiff, under multiple theories, claims that Lynn Brands
should be subject to successor liability, and thus responsible
for Notations's debts. The general rule is to the contrary: "a
corporation that purchases the assets of another corporation is
generally not liable for the seller's liabilities." New York v.
Nat. Serv. Indus., Inc., 460 F.3d 201, 209 (2nd Cir. 2006).
However, New York law (which both parties agree applies here)
recognizes four exceptions to this general rule. "[A] buyer of a
corporation's assets will be liable as its successor if: (1) it
expressly or impliedly assumed the predecessor's . . .
liability, (2) there was a consolidation or merger of seller and
purchaser, (3) the purchasing corporation was a mere
continuation of the selling corporation, or (4) the transaction
is entered into fraudulently to escape such obligations." Id.
(quoting Schumacher v. Richards Shear Co., 451 N.E.2d 195, 198
(N.Y. 1983) (internal quotation marks omitted). Plaintiff
asserts all four theories.

---

[2] Although plaintiff disputes this, it offers no evidence to the
contrary.

24

### b. Implied Assumption of Liabilities

Although plaintiff does not appear to argue that there was any express assumption of liabilities by Lynn Brands, it argues that Lynn Brands impliedly assumed Notations's liability. To establish implied assumption of liability, "the conduct or representations relied upon by the party asserting liability must indicate an intention on the part of the buyer to pay the debts of the seller." Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F. Supp. 834, 839 (S.D.N.Y. 1977). "[A] finding of an implied assumption is more likely" where the predecessor corporation becomes a "mere shell" after the acquisition, out of concern that creditors of the predecessor will otherwise be "left without a remedy as a result of the sale." Id. at 839-40.

Previously, the Court denied Lynn Brand's motion to dismiss this claim based on a number of facts that, if true and if taken in the light most favorable to plaintiff, would suggest that "Lynn Brands meant to carry on as Notations by another name." Memorandum Order ("MTD Order") at 6-7, ECF No. 30. Plaintiff has now adduced evidence supporting many of these facts. First, it has adduced evidence that Notations told its customers that they should turn to Lynn Brands after the acquisition. Han Lynn Brands Decl. Exh. 11, ECF No. 53; Sheppeard Decl. Exh. 39, Miller Tr. 52-53. Second, plaintiff has adduced evidence that Lynn Brands is operating out of the same location that Notations

once did, Sheppeard Decl. Exh. 39, Miller Tr. 30, employs many
of the same employees, Id. at 48-49, and provides the same
services., Id. at 44. Third, it has adduced evidence that Lynn
Brands expressly asked plaintiff to fulfil pending orders placed
by Notations and made payment for those orders. Han Decl. Exh.
14; Sheppeard Decl. Exh. 39, Miller Tr. 50-51.

As the Court held at the motion to dismiss stage, "[t]his
course of conduct, taken in the light most favorable to the
plaintiff, suggests that Lynn Brands meant to carry on as
Notations by another name." MTD Order 7. This conclusion is not
affected by the fact that Lynn Brands has now produced some
communications in which Notations expressly told plaintiff that
it would not assume Notations's debts, because "express
disclaimers do not preclude a finding of implied assumption of
liabilities." MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,
965 N.Y.S.2d 284, 310 (Sup. Ct. N.Y. Cty. 2013). The Court thus
denies Lynn Brands's motion for summary judgment on plaintiff's
implied assumption of liabilities claim.

c. Successor Liability - Fraud

Plaintiff next claims that successor liability applies to
Lynn Brands because the transfer of assets from Notations to
Lynn Brands was fraudulent. "When a party has alleged facts to
show that a fraudulent conveyance may have taken place, it can
be inferred that the transaction was undertaken to defraud

26

creditors and the second exception for imposing successor

liability applies." Silverman Partners LP v. Verox Group, No. 08

CIV 3103(HB), 2010 WL 2899438, at *6 (S.D.N.Y. July 10, 2010).

Actual intent to defraud creditors can be inferred from

specified "badges of fraud" which include: "(1) the inadequacy

of consideration received, (2) the close relationship between

the parties to the transfer, (3) information that the transferor

was insolvent by the conveyance, (4) suspicious timing of

transactions or existence of pattern after the debt had been

incurred or a legal action against the debtor had been

threatened, or (5) the use of fictitious parties." Id.

Plaintiff has now offered evidence sufficient to raise a

genuine issue as to whether the transfer was fraudulent. First,

Plaintiff offers evidence that Notations and Lynn Brands worked

together to ensure priority payment of Notations's debts to

Melko, Notations's third-party logistics company. Plaintiff

provides an email that supports the existence of just such an

agreement. Han Lynn Brands Decl. Exh. 5, Lynn Brands 020222. In

other words, plaintiff has provided some evidence that Notations

and Lynn Brands worked in concert to favor one of Notations's

unsecured creditors. Such unequal treatment of creditors

suggests that consideration may have been inadequate because the

parties failed to "deal honestly, fairly, and openly," and thus

in good faith. Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d

406, 448 (S.D.N.Y. 2014). This email also defeats Lynn Brands's argument that plaintiff has not demonstrated prejudice such that it has standing to bring a fraud claim. Absent this agreement, it is possible that Notation's remaining assets would not have been used to pay off Melko's debt first, and that Notations would have thus received a greater share of the remaining assets' value.

Second, and more troubling, is an email from Matt Polsky, a financial advisor to Notations, to Michael Sheppeard, a lawyer for Lynn Brands. In the email, Polsky emphasized that "Transition matters and process hinge on what you believe can avoid obvious 'SL.'" Han Lynn Brands Decl. Exh. 3, Lynn Brands 3425. A reasonable jury could conclude that "SL" stands for successor liability, and that this email shows that Lynn Brands and Notations engaged in their transaction with the fraudulent intent to avoid liability to creditors.

Third, plaintiff offers evidence of suspicious timing of transactions, specifically, that Notations continued to build up debt very close to the time of the acquisition of its assets by Lynn Brands. Han Decl. Exh. 3, 11234. Taken in the light most favorable to plaintiff, these three pieces of evidence are sufficient to create a genuine dispute as to whether Lynn Brands possessed fraudulent intent and is thus liable as a successor to Notations. The Court thus denies Lynn Brands's motion for

28

summary judgment against plaintiff on its fraud-based successor
liability claim.

### d. Successor Liability - De Facto Merger

Plaintiff next argues that there has been a de facto merger
between Notations and Lynn Brands such that successor liability
is appropriate. Typically, the elements of a de facto merger
under New York law are "(1) continuity of ownership; (2)
cessation of ordinary business and dissolution of the acquired
corporation as soon as possible; (3) assumption by the purchaser
of the liabilities ordinarily necessary for the uninterrupted
continuation of the business of the acquired corporation; and
(4) continuity of management, personnel, physical location,
assets, and general business operation." Nat. Serv. Indus.,
Inc., 460 F.3d at 209. "Although the court examines all of the
foregoing factors, continuity of ownership is the essence of a
merger, and the doctrine of de facto merger cannot apply in its
absence." Priestly v. Headminder, Inc., 647 F.3d 497, 505-06 (2d
Cir. 2011) (quoting Nat. Serv. Indus., Inc., 460 F.3d at 211)
(internal quotations omitted).

Here, plaintiff has not alleged any facts suggesting
continuity of ownership, and thus its de facto merger claim
cannot succeed. Priestley v. Headminder, Inc, 647 F.3d 497, 505-
06 (2d Cir. 2011) (per curiam) ("[T]he doctrine of de facto
merger cannot apply in [the] absence" of "continuity of

29

ownership."). Plaintiff attempts to rely on some cases suggesting that continuity of ownership is not essential to the finding of de facto merger. These cases, however, come from the products liability context, the only situation in which the Second Circuit has held that continuity of ownership is not "essential to the finding of a de facto merger." Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 104 (2d Cir. 2002).

Further, plaintiff attempts to argue that continuity of ownership is satisfied where "the principal of predecessor retains control over the assets and operations transferred to successor and dominates the successor's operations." Mem. of Law in Opp. to D. Lynn Brands LLC's Mot. for Summary Judgment 18, ECF No. 52. Plaintiff, however, cites only to cases from the tort context to support this standard. And even if this were the standard, plaintiff has adduced no evidence that Erman retains control over the assets and operations of Lynn Brands. He is an employee of Lynn Brands, not president as he was at Notations, and the closest he comes to earning profits sharing is a bonus calculated based on Lynn Brands's profits.

The Court thus grants Lynn Brands's motion for summary judgment against plaintiff on its de facto merger successor liability claim.

e. Successor Liability – Mere Continuation

30

Plaintiff last argues that Lynn Brands is liable for Notations' debts because Lynn Brands is a "mere continuation" of Notations. "The mere continuation exception refers to a continuation of the selling *corporation* in a different form, and not merely to a continuation of the seller's business. It applies where a purported asset sale is in effect a form of corporate reorganization." Cargo Partner, 207 F. Supp. 2d at 95 (internal quotation marks and emphasis omitted). "A continuation envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer." Ladjevardian, 431 F. Supp. at 839 (internal citations omitted). Generally, where the predecessor has not been dissolved, application of the mere continuation doctrine is inappropriate. Cargo Partner, 207 F. Supp. 2d at 95-96.

Plaintiff does not dispute that Notations continues to exist in some form and thus has not been entirely dissolved. Pl. Lynn Brands SMF ¶ 8. However, some courts have held that the dissolution factor may be met when the corporation is "shorn of its assets and has become, in essence, a shell," which plaintiff argues has occurred here. See, e.g., Silverman Partners, 2010 WL 2899438, at *5 (internal citation and quotation marks omitted). Here, however, the Court need not decide whether it agrees with these courts, because even if Notations is a "mere shell" plaintiff has failed to adduce evidence of "identity of

31

directors [and] stockholders" as well. Ladjevardian, 431 F. Supp. at 839.

As discussed above, plaintiff has not demonstrated any identity of stockholders or ownership. Although it claims that Scott Erman "retains control over the assets" of Lynn Brands such that there is identity of ownership, its only evidence on this point is that Erman is a senior executive and head of sales and merchandizing at Lynn Brands. Sheppeard Decl. Exh. 25, Erman Tr. 15. This is simply not evidence of retention of control over Lynn Brands's assets, even taken in the light most favorable to plaintiff. Indeed, this same deposition suggests that Erman's role has substantially changed. For example, he is now an employee rather than a shareholder, and hence must bring all decisions to new managers. Id. at 145-46.

The Court thus grants Lynn Brands's motion for summary judgment against plaintiff on its mere continuation successor liability claim.

IV. Notations & Scott Erman's Motion for Summary Judgment on Lynn Brands's Cross-Claim

Finally, the Court addresses Notations and Scott Erman's motion for summary judgment on Lynn Brands's cross-claim for common law contribution and indemnification. Lynn Brands concedes that it does not have a contractual claim for contribution and indemnification.

32

### a. Common Law Contribution

Whether a common law right to contribution exists largely turns on the underlying action for which Lynn Brands seeks contribution. Under New York law, a common law right to contribution is embodied in N.Y. C.P.L.R. § 1401.9. Section 1401 may not "be invoked to apportion liability arising solely from breach of contract." Perkins Eastman Architects, P.C. v. Thor Engineers, P.A., 769 F. Supp. 2d 322, 326 (S.D.N.Y. 2011) (citations omitted). "Rather, it is well settled that the existence of some sort of tort liability is a prerequisite to application of the statute." Id. Thus, if Lynn Brands seeks contribution for a breach of contract claim, it may not seek contribution, but if Lynn Brands seeks contribution for a tort claim, it may.

Lynn Brands argues that it is seeking contribution for a tort claim because plaintiff only alleges successor liability against it, which it asserts is a tort claim. Successor liability, however, is not inherently a tort or contract claim. Rather, it establishes a successor's obligation to pay for its predecessor's liabilities, whether the liabilities are based in contract or tort. Thus, the nature of the contribution Lynn Brands seeks depends on the claims plaintiff asserts against Notations. Here, plaintiff asserts both contract and tort claims against Notations. The tort claims, however, are limited to a

33

fraud and piercing the corporate veil claim. As discussed above, these claims fail as a matter of law. Thus, if plaintiff successfully holds Lynn Brands liable as a successor to Notations, it will only be for liability arising from a breach of contract claim. See Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 551-52 (N.Y. 1992) ("Though the line separating tort and contract claims may be elusive . . . where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory."). Ultimately, then, Lynn Brands seeks contribution for a contract claim, and the Court must grant Notations and Erman's motion for summary judgment against such a contribution claim.

b. Common Law Indemnification

Lynn Brands next seeks common law indemnification from Notations and Scott Erman. A common law indemnification claim under New York law requires proving that "(1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture, No. 06 CIV.181(GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007), aff'd sub nom. In re Century/ML Cable Venture, 311 F. App'x 455 (2d Cir. 2009) (citation omitted).

34

Notations argues that Lynn Brands has adduced no facts
suggesting there was a duty to indemnify between the two
parties. Lynn Brands claims that "Notations and Erman had a duty
not to thwart [Lynn Brands's asset purchase] with independently
tortious actions." Mem. of Law in Opp. to Mot. for Summary
Judgment by Notations 5, ECF No. 51. Lynn Brands, however, cites
to no case law supporting the existence of such a duty.[3] Given
Lynn Brands has not pled facts demonstrating any duty between
Notations and Lynn Brands, the Court grants summary judgment
against Lynn Brands on its cross-claim for indemnification.

V.   Conclusion

For the reasons outlined above, the Court grants in part
defendants Notations, Erman, and Lynn Brands's motions for
summary judgment against plaintiff. However, the Court denies
the motions for summary judgment as to plaintiff's quantum
meruit and unjust enrichment claim against Notations and Erman,
as well as plaintiff's implied assumption of liability and
fraud-based successor liability claims. Furthermore, the Court
grants Notations and Scott Erman's motion for summary judgment

---

[3] Lynn Brands cites to Waters v. New York City Housing Authority,
69 N.Y.2d 225, 230 (N.Y. 1987) as establishing a duty where "the
party seeking indemnity reasonably expected the tortfeasor's due
care and proper performance." Mem. of Law in Opp. to Mot. for
Summary Judgment by Notations 5, ECF No. 51. That case, however,
in no way stands for this proposition, and only discusses the
duties of landlords.

on Lynn Brands's cross-claim for common law contribution and
indemnification.

SO ORDERED.

Dated:    New York, NY

          December 3, 2019          JED S. RAKOFF, U.S.D.J.